IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HILARY CYRIL, | : | CIVIL ACTION NO. **1:CV-05-2658** |
| | : | |
| Petitioner | : | (Judge Caldwell) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| | : | |
| BUREAU OF IMMIGRATION AND | : | |
| CUSTOMS ENFORCEMENT, et al., | : | |
| | : | |
| Respondents | : | |

**REPORT AND RECOMMENDATION**

On December 27, 2005, the Petitioner, Hilary Cyril, an inmate at the York County Prison ("YCP"), *pro se*, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, challenging his continued detention and seeking release. **(Doc. 1)**. Petitioner filed a request for leave to proceed *in forma pauperis*. (Doc. 2). We granted Petitioner's *in forma pauperis* request, and Respondents[1] were ordered to show cause why the Petition should not be granted. (Doc. 4). A Response to the Petition, along with supporting Exhibits, were simultaneously filed on January 23, 2006. (Doc. 7). Petitioner then filed a Traverse on March 2, 2006. (Doc. 8). The Petition is

---

[1]We note, as Petitioner apparently recognizes in his Petition (Doc. 1, p. 1), that on March 1, 2003, the former Immigration and Naturalization Service ("INS") was transferred to two bureaus under the Department of Homeland Security, namely, Bureau of Immigration and Customs Enforcement ("BICE") and Bureau of Citizenship and Immigration Services. Thus, the proper Respondent, as Petitioner recognizes (Doc. 1, p. 1), is the BICE Field Office Director with jurisdiction over the detention facility where Petitioner is located. Here, Petitioner is an inmate at York County Prison and thus, this Court has jurisdiction over his Petition. *See Rumsfeld v. Padilla*, 124 S. Ct. 2711, 2718, 2722 (2004) (habeas jurisdiction rests in the district of confinement).

ripe for disposition.

**I. Background**.

The Petitioner is a native and citizen of St. Lucia (Doc. 1, p. 1) who, Respondents state, entered the United States on or about August 19, 1991, and was admitted as a non-immigrant visitor for pleasure. (Doc. 7, Exhibit A, p. 3). Petitioner was not naturalized as a United States citizen. (*Id*.). Petitioner was granted status as a lawful permanent resident ("LPR") on a conditional basis on January 31, 1994. (*Id*. & Ex. C, p. 1). The conditional provisions of Petitioner's LPR status were removed in September 1996. (*Id*.). Subsequently, following a guilty plea, Petitioner was convicted on January 22, 2004 of criminal possession of stolen property and unauthorized use of a motor vehicle by a New York state court. Petitioner received a sentence of one year incarceration on both charges to run concurrently. (*Id*. & Ex. B).[2]

Based on Petitioner's stated conviction, on October 29, 2004, BICE issued a Notice to Appear on Petitioner. (*Id*., Ex. A). Petitioner states that he was detained and then sent to the YCP where he has remained to the present day. (Doc. 8, p. 2). Petitioner states that he has been in BICE custody for 255 days as of the date of his Traverse, March 2, 2006. (*Id*., p. 2). Petitioner states that he has been detained over the six-month presumptive removal period and that "totally cooperate (sic) to obtain travel documents." (*Id*.).

According to Respondents' evidence, as stated, on October 29, 2004, BICE issued a Notice to Appear, thus commencing removal proceedings against Petitioner for being removable due to

---

[2]All of Petitioner's prior convictions are listed in his September 2005 POCR , Doc. 7, Ex. E, p. 2.

his theft related conviction and prison sentence of at least one year, defined as an aggravated felony. (Doc. 8, Ex. A). The Show Cause Order indicated that the Immigration Judge's ("IJ") office would send Petitioner a notice of his removal hearing he was required to attend. (*Id*.). Petitioner was sent this notice on the same date it was issued. (*Id*., p. 2). The Notice to Appear charged Petitioner with being removable under INA § 237(a)(2)(A)(iii).

Petitioner had an immigration hearing on February 3, 2005. Petitioner appeared for his hearing. (*Id*., Ex. C). The IJ found that there was no relief from removal to which Petitioner was entitled as an aggravated felon convicted of criminal possession of stolen property in the third degree, a particularly serious crime. (*Id*., pp. 2-3). The IJ issued an Order on this date directing that Petitioner be removed from the United States to St. Lucia. (*Id*.). Petitioner filed an appeal of the February 3, 2005 removal order with the Board of Immigration Appeals ("BIA"), but his appeal was withdrawn on June 15, 2005. (*Id*., Ex. D & Doc. 8, p. 2). Thus, the Petitioner's final removal order became effective on June 15, 2005. (Doc. 8, Ex. E, p. 1).

Subsequently, on December 27, 2005, Petitioner filed the instant Petition for Habeas Corpus.

Petitioner seems to indicate that he came into BICE custody on June 15, 2005, as he states that as of his present Habeas filing, he had been in BICE detention about six (6) months, and for 255 days as of the March 2, 2006 fling of his Traverse. (Doc. 1, p. 1 & Doc. 8, p. 2). However, the evidence reveals that Petitioner was taken into BICE custody on February 18, 2005. (Doc. 7, Ex. E, p. 1). Thus, Petitioner has now been detained by BICE for over one year.

Petitioner raises one claim in his habeas petition, namely his continued detention by BICE, beyond the six-month presumptive removal period, is impermissible in light of *Zadvydas*. (Doc. 1, pp. 1-2). Petitioner states that the government of St. Lucia has not agreed to accept him and has not issued a travel document for him, and that he has not acted to prevent his removal. (*Id*.). In his Traverse, Petitioner states that he has fully cooperated with BICE to obtain his travel documents, but nonetheless, he has been detained without removing him from the United States well beyond the six-month removal period. (Doc. 8). As relief, Petitioner seeks the Court to order his release from illegal detention. (Doc. 1, p. 2). As Petitioner requests, we liberally construe his *pro se* Petition and agree with Respondents that he is claiming that there is no significant likelihood of his removal to St. Lucia in the reasonably foreseeable future. (Doc. 8, p. 1 & Doc. 7, p. 3).

The record demonstrates that in September 2005, Petitioner was given an initial custody review by BICE Post Order Custody Review ("POCR") for consideration of his release on supervision. (Doc. 7, Ex. E). In Petitioner's POCR, it was noted that Petitioner did not submit any documentation for his review regarding a place to live in the United States, any close family ties in the United States, any sponsors, any job prospects, and any information that he was not a flight risk. (Doc. 7, Ex. E, pp. 5-6). It was also stated by a Deportation Officer as follows:

> ICE has received travel documents from the St. Lucia consulate in the past and there is no reason to believe that a travel document will not be issued in the case. I will recommend that the subject remain in the custody of ICE until his removal from the United States.

(*Id*., p. 7).

On September 13, 2005, BICE issued a Decision to Continue Detention in Petitioner's case. (Doc. 7, Ex. E). Specifically, in its September 13, 2005 Decision, BICE indicated as follows:

4

> After carefully weighing the factors pertaining to your case, you will not be released from the custody of the ICE because you have not demonstrated that you would not present a threat to society if you were released. In fact, a review of your file reveals that you were convicted twice for the following. <u>Attempted murder, assault with intent cause injury, DWI 1st and 2nd offenses and criminal possession of stolen property in the 3rd degree.</u> You have failed to supply any documentation for this review to show efforts taken on your part to rehabilitate yourself during your incarceration. As a result it is assumed that you will pose a threat to society if released.
>
> Additionally, you have also failed to supply any information for your review, which would establish your ties to the community through family, friends or support programs. As a result it is assumed that you would pose a flight risk if you were released from custody at this time.

(*Id.*, Ex. F).

Further, since Petitioner was not released or removed from the United States by December 2, 2005, final determination of his custody was transferred to HQPDU. (*Id.*).

Recently, on January 12, 2006, HQPDU again reviewed Petitioner's custody status and issued a Decision to Continue his Detention. (*Id.* Ex. F, p. 2). This Decision stated as follows:

> A request for a travel document was submitted to the Consulate of St. Lucia and the process to verify your identity is ongoing. The government of St. Lucia regularly issues documents to effect the repatriation of its nationals. There is no indication at this time that a certificate will not be issued for your repatriation.

(*Id.*).

Petitioner claims that he has been aiding BICE to obtain his travel documents and that his removal to St. Lucia is not reasonably foreseeable. He states that his six-month presumptive removal period has now expired that his removal to St. Lucia is not likely in the reasonably foreseeable future. Petitioner states that his continued detention by BICE is unlawful based on

5

*Zadvydas* and is unconstitutional.  (Doc. 1, p. 1-2).   Petitioner states that despite his full cooperation, he has been continuously detained and that the St. Lucia Consulate has not given him the necessary travel documents.

The January 12, 2006 Decision contains recent efforts taken by BICE to secure Petitioner's travel documents, namely that a request for his travel document was submitted to St. Lucia consulate and that the process to verify Petitioner's identity was still ongoing.  (Doc. 7, Ex. F, p. 2). It was also stated that St. Lucia regularly issues travel documents for the repatriation of its nationals. Petitioner has not offered any evidence to dispute these facts.  Petitioner has also not offered any evidence to dispute BICE's reported level of Petitioner's cooperation.  The record, as detailed above, also differs significantly with Petitioner's claims on the issue of whether Petitioner's removal is reasonably foreseeable.

Based on the record before us, we agree with Respondents that Petitioner's continued detention is proper and that he has failed to show that his removal is not reasonably foreseeable. Petitioner has not submitted any evidence to controvert or dispute Respondents' evidence that a request for his travel document was submitted to St. Lucia, that this country regularly issues travel documents for the repatriation of its nationals, and that once Petitioner's identity is verified, there is no indication that a travel document will not be issued for his repatriation.  In his Traverse, Petitioner asserts that contrary to Respondents' claim that he has not assisted BICE in obtaining his travel documents, he has "fully cooperate[d] with BICE to obtain my travel documents." (Doc. 8, p. 1). While Petitioner claims that he has "fully cooperated with [BICE]" (Doc. 1, p. 1), and that despite his efforts the St. Lucia Consulate has not issued his travel documents (*Id*.), he has not

6

submitted any evidence to this Court to substantiate this claim. Nor has Petitioner, as stated, refuted the evidence of Respondents that as of January 12, 2006, a request for Petitioner's travel document was sent to St. Lucia and that based on the history of this country with respect to accepting the repatriation of its nationals, once his identity is verified, a travel document will be issued for Petitioner's repatriation.

Petitioner also claims, without any support, that he has been cooperative. Again, Petitioner has not offered a single shred of evidence to support his contentions or to controvert Respondents' evidence. We also find that, based on Petitioner's stated criminal record and his failure to submit documentation regarding any rehabilitative efforts he has made, BICE has properly considered him a threat to society in its September 2005 custody review. (Doc. 7, Ex. F).

Petitioner has been in BICE custody at the York County Prison since February 18, 2005. (Doc. 7, Ex. E, p. 1). Petitioner remains in BICE custody to the present day. Petitioner states that his removal to St. Lucia is not reasonably foreseeable by BICE and that it will not be able to remove him, despite the undisputed fact that BICE has now contacted the St. Lucia Consulate to facilitate his removal by requesting a travel document, and the Consulate is in the process of verifying his identity. Respondents' evidence reveals that St. Lucia has not refused to issue travel documents for its nationals in the past and that this government regularly issues travel documents for the repatriation of its nationals. (Doc. 7, Ex. F, p. 2).

Petitioner claims that his detention for the six-month presumptive reasonable time period which the Supreme Court has established has expired and he still has not been removed, and that his continued detention is unreasonable and contrary to *Zadvydas*. (Doc. 1, pp. 1-2). Petitioner

contends that the government's removal of him to St. Lucia is not likely to occur in the reasonably foreseeable future and that his continued detention by BICE is contrary to *Zadvydas* because BICE cannot effectuate his removal to St. Lucia. (*Id*., & Doc. 8, pp. 1-2). Thus, Petitioner states that his continued detention is unlawful. (*Id*.). We agree with Respondents (Doc. 7, pp. 5-6) and their noted cases, that the Petitioner's claims are simply based on the fact that he has been detained for over six (6) months. However, this fact alone without any evidence of a good reason to conclude that there is no significant likelihood of his removal in the reasonably foreseeable future, is insufficient. As discussed, in September 2005, prior to the filing of the present Petition, Petitioner's Post Order Custody Review ("POCR") was completed by BICE. (Doc. 7, Exhibit E). The review, directing Petitioner's continued custody by BICE, was signed on September 18, 2005. (*Id.*, p. 8). The BICE Field Office Director made a custody determination in which he ordered Petitioner to remain in custody. (*Id*.). Petitioner received notice of his continued detention, and he was advised that his file was forwarded to Headquarters Post Order Detention Unit ("HQPDU") for a final custody determination. (Doc. 7, Ex. F, p. 1).

Petitioner then filed the instant Habeas Corpus Petition on December 27, 2005, in which he alleges that his indefinite detention by BICE at YCP is a violation of his due process rights. Petitioner claims that under *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491 (2001), as an alien in post final removal order detention beyond six (6) months, once he has provided good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future, the BICE must show a reasonable likelihood of his deportation. Petitioner then asserts that the BICE is unable to deport him to St. Lucia in the reasonably foreseeable future. (Doc.1, pp. 1-2).

Petitioner also claims that under the Fifth Amendment, his procedural due process rights have been violated. (*Id*.).

## II. Analysis.

### 1. *Exhaustion of Administrative Remedies.*

As Petitioner recognizes (Doc. 1, pp. 1-2), it is well-settled that once aliens have entered the United States, even illegally, they are entitled to due process protection against unlawful or arbitrary restraint by the government. *See Patel v. Zemski,* 275 F. 3d 299, 307 (3d Cir. 2001). The *Patel* Court also stated that under *Zadvydas*, immigration detention implicates a fundamental liberty interest and that the INS is limited with respect to the detention of post-removal-order aliens "to a period reasonably necessary to bring about the alien's removal, generally no more than six months." *Id*. at 309 (citing *Zadvydas*, 121 S. Ct. at 2505).

The Petitioner was notified of his continued detention and he received the decision from BICE about his continued detention. Petitioner has also received his custody reviews in September 2005 and January 2006. (Doc. 7, Ex. F). Respondents' evidence reveals that Petitioner received a custody review, as required by *Zadvydas*[3]. Petitioner has received notices that his detention by BICE will continue. Petitioner simply contends that he has been detained beyond six months and that his removal is not significantly likely to occur in the reasonably foreseeable future. Thus, Petitioner claims that his Fifth Amendment due process rights were violated since he has not been

---

[3]As Respondents recognize (Doc. 11, pp. 5-6), 8 C.F.R. § 241.13 sets forth procedures for determining whether there is a significant likelihood of removing a detained alien, subject to a final order of removal, in the reasonably foreseeable future. The alien must submit a written request for release with BICE asserting the basis for his belief that there is no significant likelihood of his removal. 8 C.F.R. § 241.13 (d)(1).

released by BICE, in violation of *Zadvydas*. Petitioner then states that based solely on his detention for over six (6) months, there is not a significant likelihood that he will be removed to St. Lucia in the reasonably foreseeable future. The Respondents do not assert that Petitioner failed to exhaust his administrative remedies in their Response. (Doc. 7). Thus, we find that in light of his custody reviews of September 2005 and January 2006 (Doc. 7, Exhibit F), and Respondents' failure to raise this defense, exhaustion under § 241.13 is not at issue in this case.[4]

### 2. *Zadvydas* Claim.

In *Zadvydas*, 533 U.S. at 689, the Court held that "the statute [§241 (a)(6)], read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." *Id*. at 689. "A statute permitting indefinite detention of an alien would raise a serious constitutional problem. The Fifth Amendment's Due Process Clause forbids the Government to depriv[e] any person ... of liberty ... without due process of law." *Id.* at 690, 121 S. Ct. at 2505;

---

[4]In *McCarthy v. Madigan*, 503 U.S. 140, 112 S.Ct. 1081 (1992), the Supreme Court stated: "This Court long has acknowledged the general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts... . Exhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency... . The exhaustion doctrine also acknowledges the commonsense notion of dispute resolution that an agency ought to have an opportunity to correct its own mistakes with respect to the programs it administers before it is hauled into federal court. Correlatively, exhaustion principles apply with special force when 'frequent and deliberate flouting of administrative processes' could weaken an agency's effectiveness by encouraging disregard of its procedures." 503 U.S. at 144-145, 112 S.Ct. at 1086. An alien held in detention by the INS must likewise exhaust his available administrative remedies before pursuing a habeas petition in federal court unless the administrative remedies are inadequate or their pursuit would be futile. *Grant v. Zemski*, 54 F. Supp. 2d 437, 441-442 (E.D. Pa. 1999).

*Patel*, 275 F. 3d at 309.[5]

Subsequent to *Zadvydas*, as noted, BICE enacted new regulations in which it established a custody review procedure. *See* 8 C.F.R. § 241.13.[6]  Section 241.13 "establishes special review procedures for those aliens who are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4 after the expiration of the removal period, where the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed ... in the reasonably foreseeable future." 8 C.F.R. § 241.13(a).  The regulations require the alien to provide good reason to believe there is no significant likelihood of removal to the country to which he was ordered removed in the reasonably foreseeable future.  8 C.F.R. § 241.13(a).  Since Petitioner has had two custody reviews, as stated, we find that he has exhausted the remedy provided by this regulation.    (Doc. 7, Exhibit F).

In the custody review process, BICE will conduct a review in order to determine whether there is no significant likelihood that the alien will be removed in the reasonably foreseeable future. 8 C.F.R. § 241.13(c).  The alien can also present evidence to support his claim that he will not be removed in the reasonably foreseeable future.  8 C.F.R. § 241.13(d).

The parties do not dispute that Petitioner has been in detention for over six (6) months following his final order of removal and that his detention is no longer presumptively reasonable. (Doc. 7, p. 5). However, we agree with Respondents that the Petitioner has not demonstrated that

---

[5]As in *Zadvydas,* our Petitioner is an alien who is removable on the grounds of deportability and, thus, the Court's holding in that case clearly applies to Petitioner.  *See* 8 U.S.C. § 1231 (a)(6) and §§ 1227 (a)(6) and 1227 (a)(2).  The Respondents do  not dispute this.  (Doc. 7, pp. 4-5).

[6]The BICE adopted 8 C.F.R. § 241.13 on November 14, 2001.

11

he cannot be removed from the United States in the reasonably foreseeable future. (Doc. 7, pp. 6-7). Respondents have demonstrated through their evidence that the BICE is currently working with St. Lucia authorities to obtain the necessary travel document for Petitioner. (Doc. 7, Ex. F). Respondents' evidence shows that BICE has actively being trying to obtain a travel document for Petitioner and that Petitioner's repatriation to St. Lucia is imminent in the reasonably foreseeable future. (Doc. 7, Exhibit F). Petitioner, as stated, indicates that his removal to St. Lucia is not reasonably foreseeable by BICE and that it will not be able to remove him, despite the Respondents' undisputed evidence to the contrary. Respondents have shown that BICE has contacted the St. Lucia Consulate to facilitate his removal and that the consulate once Petitioner's identity is verified will issue a travel document. (Doc. 7, Ex. F, p. 2). Petitioner does not submit any evidence that either he or BICE has been refused a travel document for him by the St. Lucia Consulate or that the Consulate does not issue travel documents for the repatriation of its nationals from the Untied States. Further, Respondents' evidence indicates that Petitioner has not been cooperative in the attempts to obtain his travel document. (Doc. 7, Exhibit E, pp. 4-6). Also, according to Respondents' evidence, BICE's Removal Unit has been successful in obtaining travel documents for St. Lucia nationals. (*Id.*, Ex. F). Respondents' evidence demonstrating BICE's recent action to obtain Petitioner's travel document has been discussed above. (Doc. 7, Exhibit F). Respondents' evidence also indicates that as of January 2006, there is no indication that a travel document for Petitioner's repatriation will not be issued. Thus, we find that BICE will soon be able to effectuate Petitioner's removal. (*Id.*).

Respondents have shown that as of January 2006, BICE has notified the St. Lucia Consulate about our Petitioner and has taken steps to effectuate his removal from the United States. (*Id*.). BICE states that the Consulate is working on issuing Petitioner a travel document once his identity is verified. (Doc. 7, Ex. F). There is no evidence that, once BICE receives a travel document from the St. Lucia Embassy for our Petitioner, his removal will not occur in the reasonably foreseeable future. There is nothing in the record which suggests that the St. Lucia Embassy does not issue travel documents for its nationals in BICE custody. As stated, Respondent has shown that BICE is presently working with the St. Lucia Embassy to obtain a travel document for Petitioner and that his removal is imminent. (Doc. 7, Exhibit F).

Petitioner did not attach any Exhibits to his Petition to show that he has made efforts to help obtain his travel document. (Doc. 1 & Doc. 8). Further, Petitioner has not disputed the conclusion in BICE's January 2006 Decision that the Consulate is working on issuing Petitioner a travel document. (Doc. 7, Exhibit F). Nor does Petitioner dispute Respondents' evidence that he has not been cooperative. (Doc. 7, Ex. E, p. 4). "*Zadvydas* does not save an alien who fails to provide requested documentation to effectuate his removal." *Pelich v. INS*, 329 F. 3d 1057, 1060 (9th Cir. 2003). *See also Lema v. INS*, 2003 WL 22038390 at * 2 (9th Cir. 2003) (if alien does not fully cooperate with officials to obtain his travel documents, then he cannot meet his burden to show that there is no significant likelihood of his removal in the reasonably foreseeable future). We find that Petitioner has not met his burden to show that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. *See Akinwale v. Ashcroft*, 287 F. 3d 1050, 1052 (11th Cir. 2002) (*per curiam*) (In order to state a

13

claim under *Zadvydas*, "the alien must not only show post removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future). As stated, Petitioner he simply attempts to meet his burden of showing a good reason to believe that there is no significant likelihood of his removal in the reasonable future by stating, that he has been detained by BICE over six (6) months. (Doc. 8, pp. 1-2).

Petitioner has not challenged the Respondents' evidence which shows that BICE believes the St. Lucia Consulate is working on issuing Petitioner's travel document and that BICE has been successful in obtaining travel documents for St. Lucia nationals, such as our Petitioner. (Doc. 7, Exhibit F). Thus, we find that Petitioner has failed to meet his burden of showing that his removal is not reasonably foreseeable.   Further, contrary to Petitioner's assertion that his continued detention does not comport with due process (Doc. 1, p. 2), the Respondents have, in fact, provided an adequate explanation as to why BICE has not been able to remove him to St. Lucia as of yet. (Doc.7, Exhibit F). The Petitioner does not offer any evidence to dispute this fact.

### 3. *Procedural Due Process Claim.*

Petitioner also is construed as claiming that BICE has violated his due process rights. However, we agree with Respondents that Petitioner is receiving regular custody reviews and that BICE is making proper decisions regarding his custody status. (Doc. 7, pp. 7-8).

Petitioner indicates that he has been detained for 255 days, now for over one year, while waiting for his removal to St. Lucia. (Doc. 8, p. 2). The six-month presumptive removal period has undisputedly expired in this case. The record in this case reflects that Petitioner is receiving regular

custody reviews by BICE, which were completed in September 2005 and as recently as January 2006, and that BICE directed that Petitioner's custody be continued. (Doc. 7, Exhibit F). As stated, Petitioner implies that he did not receive a fair custody determination by the BICE. However, the undisputed evidence has shown that he has had his custody reviews, and that BICE has made an individualized determination regarding the continued custody of Petitioner and the reasonable foreseeability of his removal. Further, as stated, Petitioner has received custody reviews and had the opportunity to show that his removal was not possible in the reasonably foreseeable future and that he is taking positive measures to facilitate his removal.[7] We also find that Petitioner has failed to show that his custody status was not made in a neutral and impartial manner.

Finally, Petitioner's case has been transferred to HQPDU as of December 2005, and HQPDU is now making custody determinations. (Doc. 7, Ex. F). Petitioner is being given the opportunity to raise and demonstrate all of his claims that he should be released from custody during his custody reviews. Thus, we find no merit to Petitioner's claim that BICE failed to give him a custody review in violation of due process. Additionally, Petitioner can show HQPDU his willingness to assist BICE in obtaining his travel document, since his final custody determination is now being decided by this Unit.

---

[7]We have also found, as discussed above, that Petitioner's continued detention does not violate his due process rights, since his removal is reasonably foreseeable.

**III. Recommendation.**

Based on the foregoing, it is respectfully recommended that the Petition for Writ of Habeas Corpus (Doc. 1) be denied.

                                        **s/ Thomas M. Blewitt**
                                        **THOMAS M. BLEWITT**
                                        **United States Magistrate Judge**

**Dated: March 21, 2006**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HILARY CYRIL, | : | CIVIL ACTION NO. **1:CV-05-2658** |
| Petitioner | : | (Judge Caldwell) |
| v. | : | (Magistrate Judge Blewitt) |
| BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENT, et al., | : | |
| Respondents | : | |

## **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **March 21, 2006.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within ten (10)
days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections.  The briefing
requirements set forth in Local Rule 72.2 shall apply.  A judge shall
make a *Defendant novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection
is made and may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge.  The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the
magistrate judge, making his or her own determination on the basis

of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                           **s/ Thomas M. Blewitt**
                                           **THOMAS M. BLEWITT**
                                           **United States Magistrate Judge**

**Dated: March 21, 2006**